## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Alexa Zhulin,<br><br>        Plaintiff,<br><br>v.<br><br>I.Q. Data International, Inc., Taylor Rogers, and Rebecca Doe,<br><br>        Defendants. | Case No.: 0:23-cv-2387<br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

## <u>INTRODUCTION</u>

1.      The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*., to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2.      This action arises out of violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., by Defendants and their collection agents in their illegal efforts to collect a consumer debt from Plaintiff.

## JURISDICTION

3.      Jurisdiction of this Court arises under U.S.C. § 1692k(d),  and 28 U.S.C. § 1367 for pendent state law claims.

4.      Venue is proper because the acts and transactions occurred here, Plaintiff resides in Minnesota, and each Defendant transacts business here.

5.      Defendant IQDI and its collection employees have transacted business within the State of Minnesota by attempting to collect a debt from Plaintiff via the telephone, the mails, and/or through the use of email while Plaintiff was located within and permanently residing within the State of Minnesota.

6.      Defendant IQDI has transacted business within the State of Minnesota by operating a collection agency, making collection calls into Minnesota, and directing debt collection activities to Minnesota.

7.      Defendant Taylor Rogers has transacted business within the State of Minnesota by using means of interstate commerce to collect consumer debts from consumers in Minnesota, including Plaintiff, as well as being licensed to collect debts within this state.

8.      Defendant Rebecca Doe, whose true name is unknown at this time, has transacted business within the State of Minnesota by using means of interstate commerce to collect consumer debts from consumers in Minnesota, including Plaintiff, as well as being, upon good faith information and belief, licensed to collect debts within this state.

## PARTIES

9.   Plaintiff Alexa Zhulin (hereinafter "Plaintiff") is a natural person who resides in the County of Dakota, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) or a person affected by a violation of that law.

10.   Plaintiff has suffered an injury in fact that is fairly traceable to Defendants' collective conduct and that is likely to be redressed by a favorable decision in this matter.

11.   Defendant I.Q. Data International, Inc. (hereinafter "Defendant IQDI") is a collection agency operating from a principal office address of 21222 30th Drive SE, Suite 120, Bothell, WA 98021, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

12.   Defendant IQDI's registered agent of process in Minnesota is Corporation Service Company at an address of 2345 Rice Street, Suite 230 Roseville, MN 55113.

13.   Defendant IQDI uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.

14.   Defendant IQDI regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

15.   Defendant Rogers regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

16.   Defendant Doe regularly collects or attempts to collect, directly or indirectly, debts

owed or due or asserted to be owed or due another and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

17.     Defendant IQDI and its employees and agents, including Defendant Rogers and Defendant Doe, directly and indirectly participated in the unlawful efforts to collect an alleged debt from Plaintiff, as further described in this complaint.

## FACTUAL ALLEGATIONS

18.     Within one year immediately preceding the filing of this complaint, Defendant IQDI attempted to collect from Plaintiff a financial obligation that was primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), by attempting to collect this debt from Plaintiff in the State of Minnesota.

19.     Sometime on or before December 2022, Plaintiff incurred an alleged debt to Concierge Apartments Property Owner LLC ("Concierge") in Minnesota ("debt") which was an approximate $500 charge for alleged unpaid rent and/or damages after Plaintiff moved out of this apartment.

20.     Plaintiff disputes this alleged debt, the final bill on this account, and any remaining balance, and is represented by the undersigned counsel both with respect to this debt and to the claims made herein.

21.     Sometime thereafter, the debt was consigned, placed or otherwise transferred to Defendant IQDI for collection from Plaintiff.

*Defendants' Illegal Collection Calls*

22.   On December 20, 2022, at approximately 12:00 pm, Plaintiff received a call from "Taylor Rogers" at IQ Data International at home.

23.   Defendant Rogers told Plaintiff that she had an outstanding bill of $505 owed to her previous landlord, Concierge Apartments in Richfield Minnesota.

24.   Plaintiff explained that she had did not know what Defendant Rogers was talking about as this was the first time Plaintiff had ever heard about having a bill with that landlord.

25.   Defendant Rogers told her that Plaintiff was required to pay the balance.

26.   Plaintiff told her that she wanted to call that landlord and figure out what was going on, but Defendant Rogers kept telling her that Plaintiff had to pay before Plaintiff get off the phone or her credit score will be affected by this, so Plaintiff would have to pay it immediately.

27.   Eventually, Defendant Rogers told her that if Plaintiff qualified, she could put a hold on the account.

28.   Defendant Rogers then took Plaintiff's financial information and told her that given the fact Plaintiff can afford to pay the only thing she can do is give her a two-hour waiting period to figure something out.

29.   Defendant Rogers also said that she could not do anything else except take Plaintiff charge card information and not charge it until Friday, December 23, 2022.

30.   Plaintiff Rogers told her that she disputed this claim on the alleged debt and wanted to talk to her landlord before she would do anything further.

31.    Defendant Rogers then said even if Plaintiff disputed the debt that Plaintiff would still have to pay Defendant.

32.    Plaintiff told Defendant Rogers that she did not have that amount of money to spend, but Defendant Rogers responded by telling Plaintiff that she could put it on a credit card.

33.    Defendant then put Plaintiff on hold and eventually a man who identified himself as Defendant's supervisor told Plaintiff that needed to pay.

34.    The supervisor said the system would not let him do anything other than click "refuse to pay" or pay and if Plaintiff refuse to pay her credit score would be affected.

35.    Plaintiff told him her landlord does not always answer the phone and asked for a bit more time to try and get ahold of them and the supervisor said he could not do that.

36.    Plaintiff again told the supervisor that this was the first time Plaintiff had heard about this bill

37.    The supervisor said it does not matter because the computer is not human and only registers a refusal to pay.

38.    Plaintiff kept telling the supervisor that she wanted to take the offer of waiting to do anything for two hours that Defendant had made, but the supervisor continued to tell her that she needed to pay this, or they would file the credit report and that there was no other option.

39.   Plaintiff asked if she could figure out this alleged debt in the next two weeks to give her time and he said "no" and that the only thing he could do was give her two hours and that they normally do not do that so they cannot not do anything else.

40.   Plaintiff kept trying to end the conversation with the supervisor by saying Plaintiff would call back in two hours and he kept reminding her that must hear back from her, and that when they did Plaintiff would either have to pay them or give them her credit card information that they could charge on following Friday.

41.   Thereafter, the call ended.

42.   This collection communication described above violated the FDCPA because Defendant's collectors misstated the law to Plaintiff, misstated the Plaintiff's rights to dispute this debt, and misstated the factual basis for the alleged debt.

43.   Defendants had never provided Plaintiff with the notices required under the FDCPA and in violation of 15 U.S.C. § 1692g.

44.   Defendants' demand for immediate payment of this debt was an illegal and harassing collection practice in violation of federal law because Defendant had never provided Plaintiff with the opportunity to dispute this debt in writing which overshadowed her substantive rights under the FDCPA.

45.   Defendants' conduct also violated the FDCPA because it was a threat to report false credit information about Plaintiff, namely, that she owed this debt when she in fact had disputed it, all done in violation of 15 U.S.C. § 1692e(8).

46.   This collection communication described above violated the FDCPA because Defendant's collectors engaged in harassing, oppressive, and abusive tactics to

pressure Plaintiff into paying a debt that she does not owe and for which she disputes.

47. These collection communications and conduct from Defendant's collection employees toward Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692d(2), 1692d(5), 1692e, 1692e(2), 1692e(5), 1692e(7), 1692e(8), 1692e(10), 1692e(11), 1692e(16), 1692f, 1692f(1), and the FDCPA's enabling regulation, Reg. F, amongst others, as well as violations of Minnesota law.

48. In addition, Defendant failed to provide Plaintiff with the notices required under the FDCPA, specifically 15 U.S.C. § 1692g, and therefore these collectors' demands for payment before Plaintiff had an opportunity to be apprised of and dispute this debt violated the FDCPA.

### *Second Collection Call with Defendant*

49. On December 20, 2022, around 1:00 pm, Plaintiff called Defendant Rogers back at Defendant's collection agency to tell her that Plaintiff need more time to figure this out.

50. Defendant Rogers was unavailable so Plaintiff talked to another women, possibly named "Rebecca" (Defendant Doe) who said she could help Plaintiff.

51. Plaintiff explained to Defendant Doe that she was disputing this debt and that she was legally allowed a reasonable time to figure this out before her credit should be affected.

52.     Plaintiff also told Defendant Doe that she thought her landlord might have written down the wrong address because Plaintiff never received anything about this bill in the mail.

53.     Defendant Doe said that that did not matter at all because legally all the landlord is required to do is to send it to her last known address and that is what they did.

54.     Plaintiff told them that she gave her current address that she provided the landlord was her current and last known address, but the landlord must have mixed it up or something and since this was the first time Plaintiff had heard about this alleged debt.

55.     Plaintiff reiterated to Defendant Doe that she was entitled to a reasonable amount of time to figure this out with them.

56.     Defendant Doe told Plaintiff that is not how the "law" works and that it does not matter whether Plaintiff received any letters or phone calls from the landlord about the debt.

57.     Plaintiff then explained how she wanted to work this out with her landlord, but Defendant Doe told her that since this debt was now in collections there was nothing Plaintiff could do and "that is what happens when you don't pay your bills."

58.     Plaintiff then asked Defendant Doe what she could do to help her figure this out and what agreement they might be able to come to.

59.     Defendant Doe told her there was no agreement to be had and that Plaintiff would have to pay the $500 because that was the total bill, and she could not change the amount negotiate it with anyone.

60. Defendant Doe also said that Plaintiff had had up until October 31, 2022, to figure this out and Plaintiff did not so she ran out of time and now Plaintiff would have to pay it.

61. Defendant Doe also said this was Plaintiff's fault for not calling about her damage deposit with the apartment.

62. Plaintiff told Defendant Doe that she did not call because Plaintiff assumed her damage deposit covered all the moving out expenses and that there was nothing left.

63. Plaintiff also said that she assumed that if Plaintiff owed them money, the landlord would contact her, and it had not.

64. Plaintiff never knew that she was expected to pay for anything related to the move out until now.

65. Defendant Doe told her that that did not matter and that she had time to fix it and won't.

66. Plaintiff then became upset and was trying to hold back tears as she explained that she did not think she should be held accountable for someone else's mistake.

67. Plaintiff also told Defendant Doe that she did not have the $500 laying around to be able to spend and that she was allowed time to figure this out.

68. Defendant Doe told her she would not talk to her if Plaintiff had "an attitude" and that Plaintiff was given time and now that time was up and Plaintiff had to pay.

69. At this point Plaintiff was so upset by the manner in which Defendant Doe was treating her and trying hard not to cry, so Plaintiff told her that she still had an hour left on her time limit and Plaintiff would make a few calls and call her back.

70. Defendant Doe told Plaintiff should be thankful that they gave her the two hours as they normally don't do that and then hung up.

71. Plaintiff was extremely upset by the manner in which she was treated by this debt collector and suffered emotional distress as a result of the collector's behavior in the form of crying, upset, distress, shaking, upset stomach, and other garden-variety emotional distress.

72. This collection communication described above violated the FDCPA because Defendant's collectors misstated the law to Plaintiff, misstated the Plaintiff's rights to dispute this debt, and misstated the factual basis for the alleged debt.

73. This collection communication described above violated the FDCPA because Defendant's collectors engaged in harassing, oppressive, and abusive tactics to pressure Plaintiff into paying a debt that she does not owe and for which she disputes.

74. These collection communications and conduct from Defendant's collection employees toward Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692d(2), 1692d(5), 1692e, 1692e(2), 1692e(5), 1692e(7), 1692e(8), 1692e(10), 1692e(11), 1692e(16), 1692f, 1692f(1), and the FDCPA's enabling regulation, Reg. F, amongst others, as well as violations of Minnesota law.

75. In addition, Defendant failed to provide Plaintiff with the notices required under the FDCPA, specifically 15 U.S.C. § 1692g, and therefore these collectors' demands

for payment before Plaintiff had an opportunity to be apprised of and dispute this debt violated the FDCPA.

***Defendant IQDI Falsely Credit Reports the Account and Adds Illegal Interest Charges***

76.   Defendant IQDI illegally added interest to this debt and falsely reported interest as due and owing on this account on Plaintiff's consumer credit reports, despite the fact that Plaintiff has vigorously disputed the basis and amount of this debt making it an unliquidated amount.

77.   Plaintiff disagreed with the Defendant IQDI's assertion about interest on this disputed debt, never agreed to pay this interest or the principal amount and refused to pay this alleged debt.

78.   In February 2023, Plaintiff reviewed her consumer credit reports and noted an entry from Defendant IQDI on her report that indicated that this disputed $505 apartment departure fee debt with Defendant IQDI had now inexplicably increased to $514.

79.   Defendant IQDI repeatedly illegally added interest and/or late fees on this alleged debt, increasing the debt from its original amount by at least $9.

80.   The FDCPA prohibits to addition of any amount over and above the principal amount of the debt unless that additional amount is permitted by the contract underlying the debt or otherwise permitted by law.

81.   Plaintiff never agreed to pay interest in any amount on this alleged debt because she did not agree that she even owed the alleged debt for the apartment rental and disputed it.  See *Tate v. Ballard,* 243 Minn. 353, 360, 68 N.W.2d 261, 266 (1954)

("Liability for interest is purely contractual, and a person is not chargeable therewith unless he has agreed to its imposition. County of Redwood v. Winona & St. Peter Land Co., 40 Minn. 512, 41 N.W. 465, 42 N.W. 473.")

82. There was no agreement between Plaintiff and Defendant IQDI underlying this debt which permitted these collection fees by Defendant IQDI and these fees are not otherwise permitted by law.

83. Defendant IQDI's demands from Plaintiff for payment for amounts not due and owing on this obligation was fraud, because it intended that Plaintiff would rely on its representations as to the amount of additional interest on the obligation, and Plaintiff in fact relied on those material misrepresentations to Plaintiff's detriment.

84. It was a false and deceptive debt collection practice for Defendant IQDI to misrepresent the amount due and owing by Plaintiff for this debt.

85. Defendant IQDI's addition of at least $9 in late charges to Plaintiff's alleged debt to Defendant IQDI was also a violation of numerous and multiple provisions of the FDCPA with respect to Defendant IQDI.

86. The above-described communications and conduct from Defendant IQDI toward Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(10), 1692e(11), 1692f, and 1692f(1), amongst others, as well as violations of Minnesota law.

### *Plaintiff has Suffered Concrete Harm*

87. The above-described collection conduct by Defendant IQDI and its collection

employees in their efforts to collect this alleged debt from Plaintiff were oppressive, deceptive, misleading, unfair, and illegal communications in an attempt to collect this alleged debt, all done in violation of numerous and multiple provisions of the FDCPA.

88.   These collection actions taken by Defendant IQDI, and the collection employees employed by it, were made in violation of multiple provisions of the FDCPA, including but not limited to all of the provisions of those laws cited herein.

89.   These violations by Defendant IQDI were knowing, willful, negligent and/or intentional, and it did not maintain procedures reasonably adapted to avoid any such violations.

90.   Defendant IQDI's collection efforts with respect to this alleged debt from Plaintiff caused Plaintiff to suffer concrete and particularized harm because the FDCPA provides Plaintiff with the legally protected right to be treated fairly and truthfully with respect to any action for the collection of any consumer debt.

91.   Defendant IQDI's deceptive, misleading and unfair representations with respect to its collection effort were material misrepresentations that affected and frustrated Plaintiff's ability to intelligently respond to Defendant IQDI's collection efforts because Plaintiff could not adequately respond to the Defendant IQDI's demand for payment of this debt.

92.   By demanding this $514.00 both in writing and by telephone, Defendant IQDI misrepresented the amount of the $505.00 debt and the amount owed by Plaintiff in violation of the FDCPA.

93.  As a licensed debt collector in Minnesota, Defendant IQDI knew or should have known that it had no right to add impermissible collection fees under the FDCPA or fees that were not provided under the contract or otherwise permitted by law. See <u>Kojetin v. C U Recovery, Inc.</u>, 212 F.3d 1318 (8th Cir. 2000).

94.  On June 29, 2022, the Consumer Financial Protection Board again weighed in on the illegality of add-on collection fees like those sought by Defendant IQDI from Plaintiff:

> Section 808(1) of the FDCPA prohibits debt collectors, in relevant part, from "collect[ing]... *any* amount (*including* any interest, fee, charge, or expense incidental to the principal obligation)." As the Supreme Court has explained, the "word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" In addition, under its ordinary meaning, the term "including" typically indicates a partial list. The CFPB interprets the words "any" and "including" as used in section 808(1) consistent with their ordinary meanings. Accordingly, the CFPB clarifies that FDCPA section 808(1) and Regulation F, 12 CFR 1006.22(b), apply to any amount collected by a debt collector in connection with the collection of a debt, including, *but not limited to*, any interest, fee, charge, or expense that is incidental to the principal obligation.
> …
> The CFPB therefore interprets FDCPA section 808(1) to prohibit a debt collector from collecting any amount unless such amount either is expressly authorized by the agreement creating the debt (and is not prohibited by law) or is expressly permitted by law. That is, the CFPB interprets FDCPA section 808(1) to permit collection of an amount only if: (1) the agreement creating the debt expressly permits the charge and some law does not prohibit it; or (2) some law expressly permits the charge, even if the agreement creating the debt is silent.

https://files.consumerfinance.gov/f/documents/cfpb_convenience-fees_advisory-opinion_2022-06.pdf (footnotes omitted, italics in original) last accessed July 26, 2022.

95. The $9 incidental fees which Defendant IQDI demanded from Plaintiff were not permitted by law and therefore were illegal add-on fees prohibited under the FDCPA.

96. The above-described communications and conduct from Defendant IQDI to Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(9), 1692e(10), 1692f, and 1692f(1), amongst others.

### *Defendant IQDI's Violations of the Regulation F "Debt Parking" Prohibitions*

97. Under its rulemaking authority, the Consumer Financial Protection Bureau issued Regulation F, effective November 30, 2021, which further constrains Defendant IQDI's lawful debt collection conduct and further expands Plaintiff's rights under the FDCPA ("Reg. F"). 12 C.F.R. § 1006, *et seq.*

> (a) Authority. This part, known as Regulation F, is issued by the Bureau of Consumer Financial Protection pursuant to sections 814(d) and 817 of the Fair Debt Collection Practices Act (FDCPA or Act), 15 U.S.C. 1692*l*(d), 1692*o*; title X of the Dodd–Frank Wall Street Reform and Consumer Protection Act (Dodd–Frank Act), 12 U.S.C. 5481 et seq.; and paragraph (b)(1) of section 104 of the Electronic Signatures in Global and National Commerce Act (E–SIGN Act), 15 U.S.C. 7004.

> (b) Purpose. **This part carries out the purposes of the FDCPA, which include eliminating abusive debt collection practices by debt collectors, ensuring that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and promoting consistent State action to protect consumers against debt collection abuses. This part also prescribes requirements to ensure that certain features of debt collection are disclosed fully, accurately, and effectively to consumers in a manner that permits consumers to understand the costs, benefits, and risks associated with debt collection, in light**

**of the facts and circumstances.** Finally, this part imposes record retention requirements to enable the Bureau to administer and carry out the purposes of the FDCPA, the Dodd–Frank Act, and this part, as well as to prevent evasions thereof. The record retention requirements also will facilitate supervision of debt collectors and the assessment and detection of risks to consumers.

12 C.F.R. § 1006.1 (emphasis added).

98.   A violation of Reg. F with respect to a consumer is a violation of the FDCPA.

99.   Section 12 C.F.R. 1006.30(a)(1) of Reg. F prohibits a debt collector from furnishing information to a consumer reporting agency about a debt before taking specific actions to contact the consumer about that debt.

100.   A debt collector can satisfy this requirement by: (i) speaking to the consumer about the debt in person or by telephone; or (ii) placing a letter in the mail or sending an electronic message to the consumer about the debt and waiting a reasonable period of time to receive a notice of undeliverability, provided certain other conditions are satisfied.  A validation notice is one type of letter or electronic communication debt collectors can use to satisfy § 1006.30(a)(1)(ii).

101.   Defendant IQDI violated Reg. F when it credit reported this disputed account on Plaintiff's all three of her consumer credit reports before ever communicating with Plaintiff. 12 C.F.R. 1006.30(a)(1).

102.   Defendant IQDI did not speak with Plaintiff, send Plaintiff a letter, or send her an electronic message before furnishing this information about this disputed account to Experian, Trans Union and Equifax.

103. The failure to communicate first with a consumer before furnisher adverse credit information is an unfair debt collection practice in violation of the FDCPA. 12 C.F.R. 1006.30(a)(1); 15 U.S.C. § 1692e(8).

104. The above-described communications and conduct from Defendant IQDI to Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(7), 1692e(8), 1692e(9), 1692e(10), 1692f, and 1692f(1), amongst others.

### *Summary*

105. The above-described collection conduct by Defendant IQDI and the other Defendants in their efforts to collect this alleged debt from Plaintiff were oppressive, deceptive, misleading, unfair, and illegal communications in an attempt to collect this alleged debt, all done in violation of numerous and multiple provisions of the FDCPA.

106. These collection actions taken by Defendant IQDI, and the collection employees employed by Defendant IQDI and the other Defendants were made in violation of multiple provisions of the FDCPA, including but not limited to all of the provisions of those laws cited herein.

107. These violations by Defendant IQDI and the other Defendants were knowing, willful, negligent and/or intentional, and Defendant IQDI did not maintain procedures reasonably adapted to avoid any such violations.

108. Defendant IQDI's and the other Defendants' collection efforts with respect to this alleged debt from Plaintiff caused Plaintiff to suffer concrete and particularized

harm because the FDCPA provides Plaintiff with the legally protected right to be treated fairly and truthfully with respect to any action for the collection of any consumer debt.

109.   Defendant IQDI's and the other Defendants' deceptive, misleading and unfair representations with respect to its collection effort were material misrepresentations that affected and frustrated Plaintiff's ability to intelligently respond to Defendant IQDI's collection efforts because Plaintiff could not adequately respond to the Defendant IQDI's demand for payment of this debt.

### *Respondeat Superior Liability*

110.   The acts and omissions herein of the individuals employed to collect debts by Defendant IQDI, and the other debt collectors employed as agents of Defendant IQDI who communicated with Plaintiff as further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant IQDI.

111.   The acts and omissions by these individuals and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant IQDI in collecting consumer debts.

112.   By committing these acts and omissions against Plaintiff, these individuals and these other debt collectors were motivated to benefit their principal, Defendant IQDI.

113.   Defendant IQDI is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in

violation of state and federal law by its collection employees, including but not limited to violations of the state and federal law in its attempts to collect this debt from Plaintiff.

## **TRIAL BY JURY**

114. Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.

## **CAUSES OF ACTION**

## **COUNT I.**

## **VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

## **15 U.S.C. § 1692** *et seq.*

115. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

116. The foregoing acts and omissions of Defendant IQDI and the other Defendants and their agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 *et seq.*, with respect to Plaintiff.

117. As a result of each Defendant violations of the FDCPA, Plaintiff is entitled to actual damages and statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Defendant IQDI herein.

## **COUNT II.**

## **FRAUD**

118. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

119. The Minnesota Court of Appeals has held:

> A prima facie case of fraudulent misrepresentation requires the plaintiff to establish that
>
>> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the other party suffered pecuniary damage as a result of the reliance.
>
> *Hoyt Props., Inc.,* 736 N.W.2d at 318 (quotation omitted). "A misrepresentation may be made either (1) by an affirmative statement that is itself false or (2) by concealing or not disclosing certain facts that render the facts that are disclosed misleading." *M.H. v. Caritas Family Servs.,* 488 N.W.2d 282, 289 (Minn.1992).

Beckman v. Wells Fargo Bank, N.A., No. A15-1819, 2016 WL 5640664, at *5–6 (Minn. Ct. App. Oct. 3, 2016).

120. During the collection communications transmitted by Defendant IQDI, Rogers and Doe to Plaintiff in the past year, Defendant IQDI, Rogers and Doe repeatedly and falsely represented to that Plaintiff was obligated to pay interest and other charges on these obligations in excess of the amounts permitted by Minnesota law, when, in material fact, Plaintiff was not so obligated.

121. Defendant IQDI, Rogers and Doe knew that the alleged debt it was attempting to collect from Plaintiff had been padded with illegal and impermissible collection

fees, and that therefore Plaintiff had no legal obligation to pay it, but it withheld that fact from Plaintiff and instead told Plaintiff that she must pay it.

122. As a licensed Minnesota collection agency, Defendant IQDI knew or should have known that it had no right to add impermissible collection fees under the FDCPA or fees that were not provided under the contract or otherwise permitted by law. See Kojetin v. C U Recovery, Inc., 212 F.3d 1318 (8th Cir. 2000).

123. Plaintiff has suffered actual pecuniary damages as a result of this Defendant IQDI, Rogers and Doe's deliberate fraudulent misrepresentations of these material facts.

124. Defendant IQDI, Rogers and Doe's misrepresentations that Plaintiff owed this increasing amount, when Plaintiff in fact did not, were material misrepresentations of fact because they influenced Plaintiff's judgment and decisions regarding how to deal with the alleged debt.

125. Defendant IQDI, Rogers and Doe knew that its misrepresentations to Plaintiff were false at the time Defendant IQDI, Rogers and Doe made them.

126. Defendant IQDI, Rogers and Doe's misrepresentations were made intending that Plaintiff would rely on them.

127. Plaintiff reasonably relied upon and acted upon Defendant IQDI, Rogers and Doe's misrepresentations and suffered damages in wasted time seeking legal advice and the costs of litigation in this matter to vindicate Plaintiff's rights under the FDCPA, as well as other damages, including lost work time, upset, frustration, embarrassment, and stress.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff prays that judgment be entered against these Defendants as follows:

- for an award actual damages and statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against Defendants IQDI, Rogers and Doe and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against Defendants IQDI, Rogers and Doe and for Plaintiff;

- for actual damages for fraud that were directly caused by relying on the fraudulent misrepresentations made by Defendant IQDI, Rogers and Doe to Plaintiff regarding this alleged debt;

- for a judgment and decree and decree that Defendants have engaged in the conduct alleged above, entering Judgment in favor of Plaintiff;

- for all actual compensatory damages suffered;

- for all other recoveries and fees otherwise permitted by these claims and by law;

- for attorney's fees and costs of suit as provided by state and federal law;

- for both pre- and post-judgment interest at the maximum allowable rate on any amounts awarded;

- and for such other and further relief as may be just and proper.

Respectfully submitted,

Dated: August 7, 2023

**THE BARRY LAW OFFICE, LTD**

By: <u>s/ Peter F. Barry</u>
Peter F. Barry, Esq.
Attorney I.D.#0266577
333 Washington Ave No, Suite 300-9038
Minneapolis, Minnesota 55401-1353
Telephone:  (612) 379-8800
pbarry@lawpoint.com

***Attorney for Plaintiff***

## <u>VERIFICATION OF COMPLAINT AND CERTIFICATION</u>

The undersigned verifies, certifies, and declares as follows:

1. I am a Plaintiff in this civil proceeding.

2. I have read the above-entitled Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information, best recollection and belief formed after reasonable inquiry.

3. I believe that this Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this Complaint in good faith and solely for the purposes set forth in it.

6. Each exhibit I have provided to my attorneys that has been attached to this Complaint, if any, is a true and correct copy of the original.

7. Except for clearly indicated redactions made by my attorney where appropriate, I have not altered, changed, modified, or fabricated any attached exhibits, except that some of those exhibits may contain some of my own handwritten notations.

*I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.*

Date __Aug 7, 2023__   Signature _*Alexa Zhulin*_
Alexa Zhulin (Aug 7, 2023 16:12 CDT)

Printed Name __Alexa Zhulin__

-25-

**NOTICE TO PRESERVE ALL DOCUMENTS, RECORDINGS, AND TANGIBLE THINGS, AND ALL ELECTRONICALLY STORED INFORMATION ("Notice")**

To the Defendant(s) Above:

**As you know, this law firm has been retained to represent the Plaintiff in the above captioned matter ("Lawsuit").** As used in this notice, the terms "you" and "your" refer to the Defendant(s) above-named and their predecessors, successors, parents, subsidiaries, divisions and affiliates and its respective officers, directors, agents, attorneys, accounts, employees, partners, contractors and other persons occupying similar positions or performing any functions on behalf of Defendant.

**My client respectfully demands that you preserve all recordings, documents, tangible things and electronically stored information that are in anyway relevant to the Lawsuit.** A civil suit has been commenced against you by my client in the District Court herein, related to the matters described herein.

**You have a legal duty to preserve evidence in this matter.** This duty to preserve evidence exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. The Minnesota Supreme Court has specifically addressed this issue:

> We have said that the spoliation of evidence is the "failure to preserve property for another's use as evidence in pending or future litigation." *Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc.,* 456 N.W.2d 434, 436 (Minn.1990) (quoting *County of Solano v. Delancy,* 264 Cal.Rptr. 721, 724 n. 4 (Cal.Ct.App.1989)). Further, we have recognized that, regardless of whether a party acted in good or bad faith, "the affirmative destruction of evidence has not been condoned." *Patton,* 538 N.W.2d at 119. The duty to preserve evidence[2] exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. *See id.* at 118–19. Breach of the duty to preserve evidence once such a duty arises may be sanctioned, under a court's inherent authority, as spoliation. *See id.* at 118. Here, we specifically reaffirm our rule that custodial parties have a duty to preserve relevant evidence for use in litigation. *Id.* at 116. We also reaffirm our previously stated rule that, even when a breach of the duty to preserve evidence is not done in bad faith, the district court must attempt to remedy any prejudice that occurs as a result of the destruction of the evidence. *Id.*

<u>Miller v. Lankow</u>, 801 N.W.2d 120, 127–28 (Minn. 2011)

**Once a duty to preserve evidence has arisen, the breach of that duty may subject a party to sanctions under a court's inherent authority as spoliation.** "Courts have long afforded redress for the destruction of evidence * * *." Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc., 456 N.W.2d 434, 436 (Minn.1990).

**Much of the information that is subject to disclosure or responsive to discovery in this case may be stored on your current and former computer systems and other media and devices, including personal digital assistants, voice messaging systems, online repositories, telephone recording systems, hard drives and cell phones.** The term Electronically Stored Information (hereinafter "ESI") should be afforded the broadest possible meaning and includes (by way of example and not as an exclusive list) potentially relevant information electronically, digitally, magnetically, optically or otherwise stored as:

- Audio and/or video records of any telephone calls and conversations made related to the events described in the Lawsuit
- digital communications (for example email, voicemail, imaging, scanning, and/or instant messaging);
- email service stores and server information (for example SQL Server, Oracle, Dropbox, Box, lotus, domino.nsf, Microsoft exchange.edb, Google Corporate Gmail, etc.);
- word processing documents (for example Microsoft Word or WordPerfect files and all drafts thereof);
- spreadsheets and tables;
- accounting application data;
- imaging and facsimile files;
- recordings of any conversations with my client;
- phone records of any calls to my client;
- databases (for example Access, Oracle, SQL Server data);
- Contact and relationship data management (for example Outlook, Ask or Interaction);
- Calendar and diary application data;
- online access data (for example temporary internet files, history files and cookies);
- presentations (for example PowerPoint and Corel presentations);
- network access and server activity logs relating to information exchanged between you and third parties, and by you with third parties;
- project management application data;
- backup and archival files;
- letters, documents, or correspondence of whatever kind related to existing loss prevention policies, and changes, updates, alterations made to loss prevention policies for the past three (3) years

**My client hereby demands that you preserve both accessible and inaccessible ESI.** This demand is reasonable and necessary.  Pursuant to the Rules of Civil Procedure, in the event of an eventual civil suit you must identify all sources of ESI you decline to produce and demonstrate why such sources are not reasonably accessible.  For good cause shown in that event, the Court may order production of ESI even if it is not reasonably accessible.  Accordingly, you must preserve ESI that you deem inaccessible so as not to preempt the Court's authority.

**Preservation requires your immediate intervention.** You must act immediately to preserve potentially relevant ESI, including, without limitation, information and the earlier of a created or last modified date for ESI concerning any activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand.  Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence.  You must immediately intervene to prevent loss due to routine operations or malfeasance and employ proper techniques and protocols to preserve ESI.  Booting a drive, examining its contents or running any application may irretrievably alter the evidence contained therein and constitute spoliation of evidence.

**You are also directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with that litigation hold.** You are further directed to immediately identify and modify or suspend features of your information systems and devices, which, in routine operation, operate to cause the loss of potentially relevant ESI.  Examples of such features and operations that could result in spoliation include:

- purging the contents of email repositories by age, capacity or any other criteria
- using data or media wiping, disposal, erasure of encryption utilities or devices
- overriding erasing, destroying or discarding backup media
- reassigning, re-imaging or deposing of systems, servers, devices or media
- running antivirus or other programs affecting wholesale metadata alteration
- releasing or purging online storage repositories
- using metadata stripper utilities
- disabling server, packet or local instant messaging login
- executing drive or file defragmentation or compression programs
- shredding or other destruction of documents, routine or otherwise

**You should anticipate that your officers, employees, or others may seek to hide, destroy or alter ESI.**  This is not a concern that is unique to you or your organization.

Rather it is simply conduct that occurs with such regularity that any custodian of ESI and their counsel must anticipate and guard against its occurrence.  You are directed to preserve complete backup tape sets (including differentials and incrementals) containing recordings, emails and ESI for any person involved in the activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand, whether inside or outside of your organization and control.  You should also take affirmative steps to prevent anyone with access to your data, systems or archives from seeking to modify destroy or hide ESI.

**As an appropriate and cost-effective means of preservation, you should remove from service and securely sequester the systems, media and devices housing potentially relevant ESI.**  In the event that you deem it impractical to sequester those systems, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems identified above is expedient and cost effective.  As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods.   Failure to use such methods imposes a significant threat of spoliation and data loss.  Be advised that a conventional copy, backup or ghosting of a hard drive does not produce a forensically sound image because it only captures active, unlocked data files and fails to preserve forensically significant data.

**You should anticipate that certain ESI, including but not limited to recordings, spreadsheets and databases will be sought in the forms or form in which it was ordinarily maintained, that is in native form.**  Accordingly, you should preserve ESI in such native forms and should not employ methods to preserve ESI that remove or degrade the ability to search ESI by electronic means or that make it difficult or burdensome to use that information.

**You should further anticipate the need to disclose and produce system and application metadata and act to preserve it.**  System metadata is information describing the history and characteristics of other ESI.  This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access.  Metadata may be overwritten or corrupted by careless handling or improper preservation, including by moving, copying or examining the contents of files.  As hard copies do not preserve electronic search ability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions.  If information exists in both electronic and paper forms, you should preserve both the forms.

**We desire to work with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol if you will furnish an inventory and description of the systems and media to be preserved.**  Alternatively, if you

promptly disclose the preservation protocol you intend to employ, perhaps we can now identify any points of disagreement and resolve them.

**A successful and compliant ESI preservation effort requires expertise.**  If you do not currently have such expertise, we urge you to engage the services of an expert in electronic evidence and computer forensics.  Perhaps our respective experts can work cooperatively to secure a balance between evidence preservation and burden that is fair to both sides and acceptable to the Court.  I am available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay.  Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay of production of evidence to which we are entitled, that failure would constitute spoliation of evidence.

**Please confirm in writing no later than five (5) business days from the date of this Notice, that you have taken the steps outlined in this Notice to preserve ESI and tangible documents potentially relevant to this pending action.**  If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.

If you retain legal counsel with respect to these matters, please direct this Notice to their immediate attention.  Thank you for your anticipated cooperation in this vital matter.