UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Alexa Zhulin,                                    File No. 23-CV-02387 (JMB/JFD)

    Plaintiff,

v.                                               **ORDER**

I.Q. Data International, Inc., Taylor Rogers,
and Ashley Foster,

    Defendants.

Peter F. Barry, The Barry Law Office, Ltd., St. Paul, MN, for Plaintiff Alexa Zhulin.

Suzanne L. Jones and Daniel Patrick Brees, Gordon Rees Scully Mansukhani, LLP, Minneapolis, MN; and Paul Gamboa, *pro hac vice*, Gordon Rees Scully Mansukhani, LLP, Chicago, IL, for Defendant I.Q. Data International, Inc.

Suzanne L. Jones and Daniel Patrick Brees, Gordon Rees Scully Mansukhani, LLP, Minneapolis, MN, for Defendants Taylor Rogers and Ashley Foster.

    This matter is before the Court on Plaintiff Alexa Zhulin's motion to recover attorney's fees and costs from Defendants I.Q. Data International, Inc., Taylor Rogers, and Ashley Foster (together, Defendants). (Doc. No. 38.) For the reasons explained below, the Court grants the motion in part.

## BACKGROUND

    On August 7, 2023, Zhulin initiated this consumer action. (Doc. No. 1.) In her two-count Amended Complaint, Zhulin alleged that Defendants had violated the Fair Debt Collection Practices Act (FDCPA) and had engaged in fraudulent misrepresentations in

1

violation of state tort law. (Doc. No. 13 ¶¶ 115–27.) Then, in June 2024, Zhulin and the Defendants reached an agreement to resolve Zhulin's claims. (*See* Doc. No. 45 ¶ 3; Doc. No. 59 ¶ 12.) In the ten months of litigation before the parties reached their agreement, discovery had commenced; however, no depositions were taken. The parties never came before the Court on any discovery-related or dispositive motions.

The terms of the parties' settlement agreement provide that Defendants would pay Zhulin $3,000 to settle her claims. (Doc. No. 45 ¶ 3.) The parties also agreed that, if they were unable to come to an agreement on an appropriate award under the FDCPA's fee-shifting provision of attorney's fees to Zhulin's counsel by May 31, 2024, the Court would decide the appropriate amount of fees. (Doc. No. 45 ¶ 1.) Ultimately, the parties were unable to agree on the attorney's fee provision of that agreement. (Doc. No. 36.)

## DISCUSSION

Zhulin requests an award of $4,262 in costs and $60,765 in attorney's fees, which represents approximately ninety-four hours of attorney time at a billing rate of $650 per hour. (Doc. No. 42 ¶ 13; Doc. No. 42-2; Doc. No. 40 at 22.) Defendants dispute both the rate at which Zhulin's counsel, Peter Barry, billed and the reasonableness of the total time billed on this matter. (Doc. No. 59 ¶ 15; Doc. No. 58 at 3.) The Court concludes that a $600 hourly rate is reasonable and that only 80% of the time billed on this matter is reasonable given the nature of the time entries presented to the Court.

The FDCPA has a mandatory fee-shifting provision by which a prevailing party will recover "reasonable attorney's fees as determined by the court." 15 U.S.C. § 1692k(a)(3).

District courts have "broad discretion" when awarding attorney's fees. *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005).

Courts generally analyze an attorney's fee request by using the "lodestar" approach, which is "calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Paris Sch. Dist. v. Harter*, 894 F.3d 885, 889 (8th Cir. 2018) (cleaned up). The reasonable rate must be "in line with [the] prevailing [rate] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Parties seeking attorney's fees have the burden to provide courts with evidence to support the reasonableness of the fees, including the reasonableness of the hourly rate and the hours worked. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983). Such evidence should address the nature of the work and the appropriateness of the hourly rates and hours of work expended. *E.g.*, *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002). The goal is "to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Courts have "broad discretion" when awarding attorney's fees. *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). In addition, courts may "take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox*, 563 U.S. at 838.

To determine the reasonableness of attorney's fees, courts consider the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform

> the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 429–30 n.3.

I.   **REASONABLENESS OF HOURLY RATE**

Defendants argue that Barry's hourly rate of $650 is unreasonable because the subject matter in this litigation "was far from complex" and because Barry offers only "self-serving" declarations for his hourly rate. (Doc. No. 58 at 7–8.) Barry counters, explaining that he occupies a unique stature as a nationally renowned subject-matter expert on the FDCPA and as an educator on FDCPA plaintiff-side litigation. (Doc. No. 40 at 14–15; Doc. No. 42 ¶¶ 21–51.) Barry also provided the Court with declarations from other plaintiffs' attorneys in the Twin Cities who practice in consumer law, including Carl Christensen, Mark Heaney, Mark Vavreck:, Randall Ryder, Thomas Lyons, Jr., Todd Murray, and Vildan Teske, who attest to Barry's qualifications and their belief that his hourly rate of $650 is reasonable. (Doc. No. 42 ¶ 49; Doc. No. 42-4.)

The Court observes that, on the one hand, an hourly fee of $650 is well above the upper end of the typical range for these types of cases: "[i]n recent history, the District of Minnesota has typically award attorney's fees ranging from $275 . . . to over $500 per hour for consumer litigation attorneys in [FDCPA] cases" and, in 2023, the median rate for a

consumer-law attorney was $431 per hour. *Berscheid v. Experian Info. Solutions, Inc.*, No. 22-CV-0086 (JRT/LIB), 2023 WL 3750182, at *4 (D. Minn. June 1, 2023) (collecting cases). On the other hand, however, the Court also observes that a similar rate was approved for Barry's services in at least one other case in this District. *Kelly v. United Payment Ctr. Inc.*, No. 22-CV-1799 (ECT/DLM), 2023 WL 6285184, at *3 (D. Minn. Sept. 27, 2023) (approving $600 per hour rate as reasonable "in view of [Barry's] credentials, legal skills, and the market").

The Court finds that, although it falls outside the typical range, a $600 hourly rate is reasonable for Barry's services in this matter. *See Kelly*, 2023 WL 6285184, at *3. The Court cannot approve the requested hourly rate of $650 because Barry has provided the Court with no evidence or explanation of why his rate has substantially increased since the decision in *Kelly*. (*See generally* Doc. No. 42.) Likewise, Barry presented the Court no information about the Twin Cities legal market to suggest rates have increased or to explain why his increased rate is justified. This Court is not convinced that the passage of one year can justify a $50 hourly increase, especially because the instant case did not involve any complex legal issues and resulted in a settlement without dispositive motions being filed.

## II.     REASONABLENESS OF TIME BILLED

The Court next turns to Barry's time entries and considers whether the time billed on this matter was reasonable such that Defendant must pay it in full. Defendants assert that several of Barry's time entries must be excluded because they represent purely administrative and clerical work, and that other entries must be discounted because they

5

reflect time unreasonably expended. For the reasons discussed below, the Court agrees with Defendants that the time entries are not reasonable and awards a reduced fee amount.

### A. Administrative and Clerical Work

Time spent on routine clerical or administrative tasks cannot be recovered as part of reasonable attorney's fees. *E.g.*, *Rosen v. Wentworth*, 13 F. Supp. 3d 944, 952–53 (D. Minn. 2014). This is true even for solo practitioners such as Barry because such tasks are "part of normal overhead costs." *Wiley v. Portfolio Recovery Assocs., LLC*, 594 F. Supp. 3d 1127, 1152–53 (D. Minn. Mar. 28, 2022). Administrative and clerical work include such tasks as organizing files, arranging for service of process, mailing, printing, and checking ECF. *See, e.g.*, *Nathanson v. Diversified Adjustment Serv., Inc.*, No. 28-CV-03102 (PJS/ECW), 2019 WL 4387960, at *5 (D. Minn. Sept. 13, 2019) (identifying drafting civil cover sheets, filing documents, and arrangement and preparation of documents for service as administrative work); *I-Systems, Inc. v. Softwares, Inc.*, No. 02-CV-1951 (JRT/FLN), 2005 WL 1430323, at *14 (D. Minn. Mar. 7, 2005) (identifying clerical and administrative functions as including "forwarding, copying, delivering, and indexing documents" which "should have been conducted by a legal assistant billing at a lower rate" and excluding such time from fee award); *MacGregor v. Mallinckrodt, Inc.*, No. 01-CV-828 (DSD/SRN), 2003 WL 23335194, at *13 n.19 (D. Minn. July 21, 2003) (identifying clerical tasks that cannot command attorney billing rate as including sending documents to court, serving and filing documents, and scheduling events).

6

The Court has identified numerous events in Barry's time entries that comprise strictly and solely administrative or clerical tasks, as follows:

| Date | Comment | Hours | Hours Discounted |
|---|---|---|---|
| 8/7/2023 | Created and signed civil cover sheet. Filed lawsuit on ECF. Assembled client verification page. Reviewed and signed complete filing. Reviewed ECF pings back from court. | 0.5 | 0.5 |
| 8/14/2023 | Call with process server. | 0.1 | 0.1 |
| 8/14/2023 | Received three returns of service from process server. Reviewed and filed on ECF. | 0.3 | 0.3 |
| 8/14/2023 | Drafted declarations of service for completion by process server. | 0.3 | 0.3 |
| 8/14/2023 | Research for proper addresses and locations of Defendants. Communications with process to arrange for national service. | 0.2 | 0.2 |
| 8/15/2023 | Reviewed and filed proofs of service on ECF. | 0.3 | 0.3 |
| 9/20/2023 | Drafted stip to Amend complaint.[1] Drafted amended complaint.[2] | 1.1 | 1.1 |

---

[1] The Court observes that the Stipulation to Amend the Complaint appears to be form in nature and did not require any specialized legal knowledge to draft. (*See* Doc. No. 10.)

[2] The Court also observes that, according to the redlined draft provided to the Court in connection with the Stipulation to Amend the Complaint, the only changes made to the initial Complaint when amending the complaint was to swap out the name "Rebecca Doe" with "Ashley Foster." (*See* Doc. No. 10-2.) This is purely clerical work.

| Date | Comment | Hours | Hours Discounted |
|---|---|---|---|
| 9/21/2023 | Filed amended complaint. Requested that court issue summons. | 0.2 | 0.2 |
| 9/21/2023 | Finalized stip to amend and filed amended complaint.[3] Prepared and transmitted proposed order[4] to court. Reviewed and filed ECF pings back from court. | 0.7 | 0.7 |
| 9/22/2023 | Prepared summons and complaint for service on Defendant Foster. Calls to process server. Declaration of service. | 0.7 | 0.7 |
| 5/17/2024 | Reviewed ECF ping. Notice of Substitution of Dan Brees. | 0.1 | 0.1 |
| 5/25/2024 | Reviewed and paid invoice to Mediator Michael Klutho. | 0.1 | 0.1 |
| 6/19/2024 | Completed request W-9 tax form from Defendant. | 0.1 | 0.1 |
| 7/15/2024 | Deposited settlement check into trust. Processed IOLTA accounting records. | 0.1 | 0.1 |
| 7/20/2024 | Ran West check[5] on briefing. | 0.3 | 0.3 |

---

[3] As previously noted, the drafting of the stipulation was clerical in nature. Additionally, the Court observes that Barry billed twice on September 21, 2023 for "fil[ing] amended complaint." (*See* Doc. No. 42-2 at 2.)

[4] The Proposed Order also appears to be form in nature and did not require any specialized legal knowledge to draft. (Doc. No. 11.)

[5] The use of WestCheck is clerical. WestCheck is a feature offered by Westlaw. Using WestCheck, users may upload a document, after which point Westlaw's "automated citation-checking software" checks the currentness and accuracy of legal citations in the

| Date | Comment | Hours | Hours Discounted |
|---|---|---|---|
| 7/20/2024 | Prepared and sent out bolstering declarations in support of fee motion.[6] | 1.3 | 1.3 |
| 7/22/2024 | Organized and finalized Exhibits to declaration. | 1.7 | 1.7 |
| 7/23/2024 | Trust Accounting. Issued settlement checks. Email to client. | 0.2 | 0.2 |
| 7/23/2024 | Email thread with Court regarding obtaining a hearing date. | 0.1 | 0.1 |
| 7/25/2024 | Email threads with Court re scheduling. Email to Gamboa. | 0.1 | 0.1 |
| 7/25/2024 | Communications with court. Scheduled hearing for fees. Email threads to counsel Paul Gamoa re: availability. | 0.1 | 0.1 |
| 7/26/2024 | Reviewed all final documents. | 0.3 | 0.3 |

---

uploaded document so that the user does not have to do so themselves. *See WestCheck User Guide*, Thomson Reuters at 1 (Apr. 2013), https://perma.cc/CLZ5-YD54.

[6] The "bolstering declarations" referred to in the July 20, 2024 entry refer to Exhibit 4 to Barry's declaration, in which he makes representations to the Court about his qualifications and reputation to support his $650 per hour rate. (Doc. No. 42-4.) The Court finds this entry problematic in a few ways. First, it is troubling that Barry seeks to recover fees for time spent drafting other lawyers' sworn statements. Second, little drafting work was needed: the statements in Exhibit 4 to Barry's declaration are nearly identical in content to the declarations of Carl Christensen, Vildan Teske, Mark Heaney, Thomas Lyons, Jr., Todd Murray, and Mark Vavreck that Barry submitted in connection with his fee petition to Judge Tostrud in *Kelly*. *See* No. 22-CV-1799 (ECT/DLM), Doc. No. 58-4. The alterations made to those documents are minimal and, at most, clerical (e.g., changing the urged billable rate from $600 to $650 and changing the number of years the declarant has been in practice). Although attorney Randall Ryder's declaration was not among those included in Barry's fee petition in *Kelly*, its contents appear to have been copied and pasted from the other declarations. Barry offers no explanation of how this type of copying and pasting constitutes anything more than clerical work.

| Date | Comment | Hours | Hours Discounted |
|---|---|---|---|
| | Updated time. F[i]led motion for fees and ECF. | | |
| | **Total time discounted:** | | **8.9 hours** |

(Doc. No. 42-2.) The Court will discount these entries entirely. *Berscheid*, 2023 WL 3750182, at *7 (discounting purely clerical entries from fee award by 100%).

Other billing entries for clerical or administrative tasks are not so straightforward. They appear in block-billing entries, in which they are mixed in with entries for billable work. Block-billing is not per se problematic. *Nassar v. Jackson*, 779 F.3d 547, 554 (8th Cir. 2015). However, block billing "is problematic only where the hours billed for multiple tasks appear excessive, or where billed time needs to be eliminated for certain tasks." *Nathanson*, 2019 WL 4387960, at *5 (quotation omitted). The Court finds that several of Barry's billing entries are problematic for the second reason—he includes legal tasks alongside administrative tasks:

| Date | Comment | Hours | Hours Discounted |
|---|---|---|---|
| 11/6/2023 | Made final edits to Rule 26f Report. *Filed with Court. Emailed copy to chambers.* | 0.2 | 0.1 |
| 11/20/2023 | Drafted FRCP 26a1s. Reviewed all documents. *Bates stamped and assembled. Served by email and US Mail.* | 1.6 | 0.8 |
| 12/18/2023 | Reviewed all documents f[ro]m court. Reviewed scheduling order. *Organized file to proceed with case.* | 0.4 | 0.2 |
| | **Total time discounted:** | | **1.1 hours** |

10

(Doc. No. 42-2 (emphasis added to administrative or clerical tasks).) The Court will reduce these entries by 50%. *Nathanson*, 2019 WL 4387960, at *5 (reducing mixed clerical-legal block billing entries by 50%).

The Court also notes that some of the block billing entries include short clerical or administrative tasks that would not have taken much time—for example, filing a document after reviewing it. Those entries are as follows:

| Date | Comment | Hours | Hours Discounted |
|---|---|---|---|
| 9/5/2023 | Reviewed answer from Defendant. *Reviewed corporate disclosure statement.*[7] *Saved to file.* | 0.3 | 0.1 |
| 1/1/2024 | Drafted discovery and *served via Email.* | 0.7 | 0.1 |
| 1/1/2024 | Drafted 30b6 and individual Deposition Notices and *served via Email.* | 1.6 | 0.1 |
| 3/13/2024 | Drafted settlement letter to magistrate. *Emailed to court.* | 2.3 | 0.1 |
| 5/13/2024 | Drafted *and served* amended Rule 26a1 disclosures. | 0.2 | 0.1 |
| 5/15/2024 | Drafted *and served* re-noticed depositions. | 0.8 | 0.1 |
| | | **Total time discounted:** | **0.6 hours** |

---

[7] The Corporate Disclosures Statement "is intended to assist judges in determining whether they must recuse themselves by reason of a financial interest in the subject matter in controversy." Fed. R. Civ. P. 26.1, Comm. Notes—2002 Ams., cmt. a, subd. A (quotation omitted).

(Doc. No. 42-2 (emphasis added to administrative or clerical tasks).)

Thus, in total, the Court will discount 10.6 hours from Barry's time entries, because this time comprises administrative and clerical work. The number of non-administrative and non-clerical hours worked has thus been reduced from 94.4 hours to 83.8 hours.

### B.   Other Time Entries

Defendants also argue that several of Barry's time entries for legal work reflect unreasonable hours worked, and they ask the Court to apply an overall downward adjustment for hours worked after Defendants made their first substantial offer of settlement in March 2024. (Doc. No. 58 at 10–12; Doc. No. 59-2 at 2.) Barry, for his part, asserts that the amount of work he billed is a result of Defendants' dilatory litigation tactics. (Doc. No. 40 at 1–2, 4–7.)

The Court first notes that, in its view, this case did not involve dilatory litigation tactics by either side. The case appears to have been a fairly normal consumer action that involved no substantive motion practice and resolved ten months after it started.

The Court next observes that Defendants have not provided the Court with authority to support its conclusion that, in an FDCPA or other statutory consumer action, the Court is required to cut off an attorney's fee award as of the date of the first substantive settlement offer. A plaintiff is permitted to decline an unsatisfactory settlement offer and continue discovery, and, in such a case, their attorney is not required to work for free. The Court therefore declines to cut off or limit the recovery of attorney's fees after the March 6, 2024 offer of settlement.

Turning to those entries, the Court initially discounts the entry dated July 26, 2024, in the amount of 2.5 hours for "[a]nticipated time for preparation, travel, and attendance at oral argument on October 15, 2024." (Doc. No. 42-2 at 6.) The Court's charge on this motion is to is to determine reasonable fees, which are "calculated by multiplying the number of hours reasonably *expended* by the reasonable hourly rates," based on information provided by the moving party. *Paris Sch. Dist. v. Harter*, 894 F.3d 885, 889 (8th Cir. 2018) (cleaned up) (emphasis added). The July 26, 2024 entry does not describe time expended—it speculates about the amount of time that may be spent on a future event that had not yet occurred. The parties were in Court for the motion for 0.8 hours,[8] and the Court adjusts this entry accordingly.

More generally, the Court concludes that an overall downward adjustment is appropriate for three reasons. First, many of Barry's time entries are too vague for the Court to discern whether the work performed was reasonably performed. *Kelly*, 2023 WL 6285184, at *4 (quotation omitted) (reducing attorney's fee award by more than $5,200 because of vague entries). For example, more than twenty of the time entries consist simply of non-descriptive narratives such as "[c]all to client," "[e]mail to client," and "[r]esearch." (*See* Doc. No. 42-2.)

---

[8] The hearing lasted forty-one minutes and the parties' attorneys arrived several minutes prior. (Doc. No. 63.)

Second, Barry's entries do not reflect whether the work he performed was in furtherance of the FDCPA claim (Count I), the state tort law claim (Count II), or both.[9] Barry brings this motion for fees under the FDCPA, which permits the recover of attorney's fees incurred "to enforce the foregoing liability [under the FDCPA]" only. 15 U.S.C. § 1692k(a)(3). (*See* Doc. No. 40 at 1–4; Doc. No. 45 ¶ 1.) Barry has not provided the Court with any basis on which to award fees for costs incurred to prosecute the state tort claim. The Court assumes that some portion of the work performed by Barry was in furtherance of the state tort claim. However, due to the lack of specificity in the billing entries, it is unable to determine the amount.

Third, by virtue of his solo business model, many of the tasks Barry undertook did not require his level of legal expertise—he performed work that otherwise could have been performed by a paralegal or a less experienced attorney who commands a lower rate. For example, Barry's time entries show that he drafted all discovery, conducted all research, reviewed routine ECF entries, and handled all communication with opposing counsel and his client. Barry is free to operate his business as he sees fit; however, he cannot expect to be compensated at a high hourly rate (much higher than average in his field in this market) for work that does not require such expertise.

For these three reasons, the Court finds that a 20% across-the-board reduction in the remaining amount of time spent on this matter is appropriate. The Court thus finds that the

---

[9] The state tort claim was never resolved or otherwise disposed of prior to the parties' entry into their settlement agreement.

number of reasonable, and therefore recoverable, billed hours is 65.68 hours.[10]  Thus, the Court will award Barry attorney's fees in the amount of $39,408, which represents 65.68 hours of legal work at $600 per hour, and costs in the amount requested of $4,262.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Plaintiff Alexa Zhulin's motion for attorney's fees and costs is GRANTED IN PART, as follows: (1) the Court awards Zhulin $4,262 in costs; and (2) the Court awards Zhulin $39,408 in attorney's fees.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  October 28, 2024                              /s/ *Jeffrey M. Bryan*
                                                     Judge Jeffrey M. Bryan
                                                     United States District Court

---

[10] 82.1 hours of legal work x 0.80 (20% discount) = 65.68 hours.